1
2
3
4                             UNITED STATES DISTRICT COURT
5                            NORTHERN DISTRICT OF CALIFORNIA
6
7    SAN MATEO COUNTY HARBOR
     DISTRICT,                                    Case No.  15-cv-01902-JD   (SK)
8                  Plaintiff,
9                                                 **IN ADMIRALTY**
10          v.                                    **REPORT AND RECOMMENDATION
                                                  RE: APPLICATION FOR: (1) MOTION
11                                                TO STRIKE; (2) DEFAULT
                                                  JUDGMENT; (3) ORDER DIRECTING
12   M/V SPIRIT OF SACRAMENTO,                    THE U.S. MARSHAL TO CONDUCT
                                                  ADMIRALTY EXECUTION SALE AT
13                 Defendant.                     WHICH PLAINTIFF IS AUTHORIZED
                                                  TO ISSUE CREDIT BID**
14
                                                  Regarding Docket Nos. 37, 38
15
16
17          Now before the Court for consideration is a Motion for Default Judgment brought by

18   Plaintiff San Mateo County Harbor District (hereinafter "Harbor District") against Defendant M/V

19   Spirit of Sacramento ("Vessel").  Concurrently, Plaintiff moves to strike the verified statement of

20   interest of Brian Gerhart filed in response to the prior arrest of the Vessel.

21          These unopposed motions were referred to the undersigned magistrate judge for a report

22   and recommendation.  (Dkt. No. 46.)  Having considered Harbor District's papers, relevant legal

23   authority and record in this case, the Court RECOMMENDS that Harbor District's Motion to

24   Strike Gerhart's Statement of Interest be GRANTED, that Harbor District's Motion for Default

25   Judgment be GRANTED, and that the District Court issue an order directing the U.S. Marshal to

26   conduct an execution sale at which Harbor District would be authorized to issue a credit bid.

27   //

28   //

*United States District Court*
*Northern District of California*

**BACKGROUND**

Harbor District is a governmental entity formed under the laws of the County of San Mateo, State of California.  (Dkt. No. 1 (Compl.), ¶ 4.)  Harbor District operates the Oyster Point Marina in South San Francisco, located within the Northern District of California.  (*Id.*, ¶¶ 3, 4.)  On April 29, 2015, Harbor District brought this *in rem* action for breach of a lease agreement and for enforcement of a statutory maritime lien pursuant to the Federal Maritime Lien Act ("FMLA"), 46 U.S.C. § 31342, and seeks a judgment condemning the Vessel and an order for its sale to pay outstanding accrued debts.  (*See* Compl.)

The Vessel is an 84.6 foot steel paddle wheeler of United States Registry, official number 510560, owned and operated by Sacramento Yacht Charters LLC, a suspended California limited liability company ("SYC").  (*Id.*, ¶ 5.)  John Morgan Stahl, Jr. ("Stahl") was the owner's appointed manager and operator of the Vessel.  (*Id.*)

On October 23, 2013, Stahl, on behalf SYC, and Harbor District entered into a Berth Rental Agreement ("Agreement").  (*Id.*, ¶ 6.)  The Agreement provided for an initial rental rate of $785.00 per month,[1] which Stahl paid for two months, through December 2013.  (*Id.*, ¶ 9.)  No further rental payments were made towards the rental of the berth.[2]  (*Id.*)

In late December 2013, the Vessel was temporarily moved to the guest dock for a New Year's Eve party and was not returned to its berth.  (Cooper Decl., ¶ 4.)  The Vessel was charged a short-term transient rental fee of the guest dock at $79.20/day from January 2 – January 18, 2014, for a total of $1,346.40, in addition to its rental fee and late charges on the berth that it was simultaneously renting.  (*Id.*)  Harbor District moved the Vessel back to its berth as it appeared that it had been abandoned.  (*Id.*)

On January 21, 2014, Harbor District sent a 30-day Notice of Termination by certified mail to Stahl.  (*Id.*, ¶ 5.)  A lien was then placed on the Vessel, which was charged to the Vessel at $108.  (*Id.,* ¶ 6.)  After the 30-days expired without response, Stahl was advised by certified mail

---

[1] Stahl listed the vessel's overall length at 98 feet on the Berth Rental Agreement, based on which the rental fee was established.  (Dkt. No. 52 (Cooper Decl.), ¶ 2.)
[2] On December 30, 2013, Stahl presented a check to Harbor District for $806.92.  The check was later returned for insufficient funds and resulted in a charge of $30 for insufficient funds.  (Cooper Decl., ¶ 11.)

United States District Court
Northern District of California

1   that the tenancy had been terminated as of February 21, 2014 and that the Vessel would incur

2   transient charges.[3]  (*Id.*, ¶ 7.)

3          On April 29, 2015, Harbor District filed this lawsuit to foreclose on the maritime lien.  On

4   May 1, 2015, the Application for Arrest Warrant was granted and issued by the Clerk of the Court.

5   (Dkt. No. 9 (Order Appt. Sub. Cust); Dkt. No. 10 (Order for Arrest Warrant).)  On May 21, 2015,

6   the Summons and Complaint were served on Vessel (Dkt. No. 13 (Exec. Return of Summons))

7   and the Vessel was arrested by the U.S. Marshal.  (Dkt. No. 19 (Proof of Pub.).)  The Vessel has

8   since been secured at the Oyster Point Marina under the custody of the Marina's manager, the

9   substitute custodian and agent of Harbor District, at a fee of $100/day.  (Dkt. No. 39 (Kelley

10  Decl.) ¶ 3; Cooper Decl., ¶ 10.)

11         On June 3, 2015, copies of the Summons, Verified Complaint and initiating pleadings were

12  mailed to all known parties with an interest in the Vessel, as listed in the Vessel's abstract of title.

13  (Kelley Decl., ¶ 6.) The Notice of Arrest of Vessel was published by Harbor District in *The*

14  *Recorder* on June 8, 2015.  (Dkt. No. 19 (Proof of Pub. of Notice of Arrest of Vessel).)

15         On June 19, 2015, Brian Gerhart, listed on the Vessel's Abstract of Title as the holder of

16  two liens in the amounts of $86,513.06 and $25,560.00, appeared *pro per* and filed a verified

17  Statement of Interest in the Vessel.  (Dkt. No. 18 (Cert. of Serv).)  No other statements of interest

18  are at issue.[4]  Mr. Gerhart has not filed an answer to the Complaint as required by Federal Rules of

19  Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims Rule C and Rule 4-2 of

20  the Northern District of California Local Asset Forfeiture and Admiralty Rules.

21         To date, neither the Vessel nor Gerhart has filed a response to the Verified Complaint.  The

22  responses were due June 11, 2015 and July 11, 2015, respectively.  The Clerk entered default on

23  July 22, 2015 as to the Vessel and all non-appearing defendants.  (Dkt No. 30, Not. of Def.)

24

25         [3] Stahl was advised that the Vessel would incur short-term transient charges of $79.20 per
    day, but that sum was later retroactively modified to the long-term transient rate of $59.40 per day.
26  (*Id.*, ¶ 7.)
         [4] Gerhart's statement of interest was submitted on behalf of himself, individually, and on
27  behalf of Gamerica, a Nevada corporation, of which Gerhart claimed to be vice president.  Given
    that Gerhart is not a licensed attorney and therefore cannot represent the interests of Gamerica, the
28  Court granted Plaintiff's Motion to Strike Gamerica's statement of interest.  (Dkt No. 35, minute
    entry before Hon. James Donato, Aug. 20, 2015.)

Harbor District filed a Motion for Default Judgment against the Vessel and a Motion to Strike Gerhart's Statement of Interest on August 31, 2015.  (Dkt. Nos. 37, 38.)  Oppositions to both motions were due by September 14, 2015.  Neither the Vessel nor Gerhart filed any opposition.

Harbor District seeks to foreclose on its lien to recoup the sums incurred as a result of the Vessel's failure to pay for the rental of its berth, "necessaries," and *custodial legis* expenses. Harbor District provides the declaration of the administrative assistant of Harbor District responsible for collections and billing activity for the Oyster Point Harbor, describing the nature of charges and costs incurred by Harbor District for the Vessel.  (*See* Cooper Decl.)  Harbor District requests that the Court issue an order directing the United States Marshal to conduct an admiralty execution sale, at which Harbor District would be authorized to issue a credit bid.

## ANALYSIS

**A.      Jurisdiction.**

This is an admiralty action *in rem* to foreclose a maritime lien under 46 U.S.C. §§ 31301(4)-(5), 31341-31343 of the Commercial Instruments and Maritime Lien Act, referred to as the Federal Maritime Lien Act ("FMLA").  The Court has jurisdiction over this matter under 28 U.S.C. §1333, which vests district courts with original jurisdiction in "any civil case of admiralty or maritime jurisdiction…."   28 U.S.C. § 1333(1).  An *in rem* action may be brought to enforce any maritime lien, or whenever a statute of the United States provides for a maritime action to be brought *in rem.*  Fed. R. Civ. P. Supp. C (1).  Here, Harbor District seeks to enforce a maritime lien under the FMLA, 46 U.S.C. § 31342.  Accordingly, the Court has subject matter jurisdiction over the action.  *See Ventura Packers, Inc. v. F/V Jeanine Kathleen,* 305 F.3d 913, 918-923 (9th Cir. 2002) (holding that the FMLA provides a statutory basis for the exercise of a district court's admiralty jurisdiction).  The Court has *in rem* jurisdiction over the Vessel because it is located in the Northern District of California.  (Dkt. No. 1, ¶ 5.) The Vessel was "arrested pursuant to maritime process," and "the warrant w[as] successfully served."  *Id.* at 585; *accord* Fed. R. Civ. P. Supp. C (2)-(3). (*See* Exec. Return of Summons.)

//

//

4

**B.** **Harbor District Fulfilled the Notice Requirements and the Requirements for Entry of Default.**

According to Local Admiralty Rules, the "party seeking a default judgment in an action *in rem* must show that due notice of the action and arrest of the property" were provided as follows:

    i. By publication as required in Fed. R. Civ. P. Supp. C(4);

    ii. By service upon the master or other person having custody of the property; and

    iii. By service under Fed. R. Civ. P. 5(b) upon every other person who has not appeared in the action and is known to have an interest in the property.

N. D. Cal. Admir. L.R. 6-1(a)(2).  The moving party must also provide notice to those with recorded interests in the applicable governmental registry, as provided in Local Admiralty Rule 6-1(b).

The publication requirement found in Supplemental Rule C(4) mandates that a moving party "give public notice of the action and arrest [of the vessel] in a newspaper designated by court order and having general circulation in the district . . . . The notice must specify the time under Rule C(6) to file a statement of interest in or right against the seized property and to answer."  Fed. R. Civ. P. Supp. C(4); N.D. Cal. Admiralty L.R. 4-2(a) (providing further details needed in publication notice); N.D. Cal. Civil L.R. 77-4(b) (listing appropriate newspapers for publication notice).  The Court finds that the Proof of Publication of Notice of Arrest of Vessel specifying that the notice was posted in *The Recorder* on June 8, 2015 (Dkt. No. 19), complies with Supplemental Rule C(4) and Local Admiralty Rule 6-1(a)(2)(i).

The Court also finds that Local Admiralty Rule 6-1(a)(2)(ii) is satisfied given that Harbor District is the court-appointed custodian of the Vessel.  Harbor District also provided notice to all parties with claims and potential claims to the Vessel, as ascertained by the Vessel's abstract of title obtained from the U.S. Coast Guard's National Vessel Documentation Center.  (Dkt. No. 39, ¶¶ 5, 6)  Also, Harbor District served notice upon the agent for service of process of the Vessel's owner.  (Dkt. No. 20.)  Notice included the statutory language required by Supplemental Rule C(6) - namely, that any person or entity who claims a possessory right or ownership interest in the Vessel file a verified statement of interest with the Clerk of the Court within 14 days, and that within 21 days from filing, that the claimant file and serve an answer to the Complaint.  (*Id.*)

Therefore, the Court finds that proper service was made in compliance with Local Admiralty Rule 6-1(a)(2)(iii), as well as 6-1(b).

Harbor District must also meet the requirements of entry of default.  Local Admiralty Rule 6-2 (b) allows for entry of default and application for default judgment under Federal Rule of Civil Procedure 55, where: (1) notice has been given as required by Rule 6-1(a)(2) and (b)(2); (2) the time to answer has expired; and (3) no one has filed a verified statement of right or possession or ownership interest in the property.

As noted above, Harbor District provided notice in accordance with Local Admiralty Rule 6-1(a)(2) and (b)(2), and the time for the Vessel to answer expired on June 11, 2015.  Default was entered on July 22, 2015 against Vessel.  (Dkt. No. 30.)  With regard to the third factor, Gerhart filed a statement of interest, but he did not file an answer to the Complaint.  Therefore, Harbor District brings a Motion to Strike Gerhart's verified statement of interest in the Vessel.  As set forth below, the Court RECOMMENDS that the District Court GRANT Harbor District's Motion to Strike the Statement of Interest, bringing Harbor District in compliance with Rule 6-2(b).

## C.     Motion to Strike the Statement of Interest.

According to Federal Rule of Civil Procedure Supplemental Rule C(6)(a), a person who asserts an interest in the property *in rem*, must file a verified statement of interest within 14 days after the execution of process and "must serve an answer within 21 days after filing the statement of interest or right."  Fed. R. Civ. P. Supp. C(6)(a)(iv).  While Gerhart timely filed a verified statement of interest, he did not file an answer.[5]

Harbor District moves to strike Gerhart's statement of interest on the grounds that Gerhart failed to comply with the requirements of Supplemental Rule C(6) and therefore failed to perfect his interest in the Vessel as required by Supplemental Rule C(6)(a)(iv).  "[C]ircuit courts consistently have held claimants to strict compliance with the provisions of Rule C(6).  The

---

[5] In fact, Gerhart has not taken action in response to any pleading for which he has received notice since filing a statement of interest, including the present Motion to Strike (Dkt. No. 37), Motion for Default Judgment (Dkt. No. 38), Plaintiff's Request for Entry of Default of Gerhart and Gamerica, Inc. (Dkt. No. 24), and Plaintiff's Motion to Strike the Statement of Interest of Gamerica, Inc. (Dkt. No. 26).

United States District Court
Northern District of California

purpose behind Rule C(6)…is 'to inform the court that there is a claimant to the property who wants it back and intends to defend it.'"  *United States v. Real Property,* 135 F.3d 1312, 1317 (9th Cir. 1998) (*citing United States v. Beechcraft Queen Airplane,* 789 F.2d 627, 629 (8th Cir. 1986)). Gerhart's failure to file an answer appears to signify that he neither desires nor intends to defend his interest in the Vessel.

The purpose behind Rule C(6) "would be ill-served if any person with an ownership interest in a property were absolved of complying with the applicable filing requirements and were empowered to challenge a forfeiture judgment long after judgment had been entered." *Real Property,* 135 F.3d at 1317.  Delaying judgment on account of Gerhart's failure would be contrary to the purpose of Supplement Rule C and the policy for resolution of disputes and finality of judgments.

Federal Rule of Civil Procedure 12(f) allows a court on its own or pursuant to motion, to "strike from a pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter."[6]  The function of a Rule 12(f) motion to strike is to avoid the waste of time and money spent on litigating spurious issues by dispensing with those issues prior to trial. *Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993) (rev'd on other grounds).  A matter is immaterial if it has "no essential or important relationship to the claim for relief or defenses being pleaded." *Fantasy, Inc.*, 984 F.2d at 1527.  A matter is impertinent if it "does not pertain, and [is] not necessary, to the issues in question.  *Id.*  In absence of an answer, Gerhart's statement of interest is both immaterial and impertinent to the resolution of the present matter.  Therefore, this Court RECOMMENDS that the District Court GRANT Harbor District's Motion to Strike.

//

//

---

[6] Supplemental Rule G, regarding forfeiture actions *in rem*, which otherwise mirrors the provisions of Rule C, specifically provides a separate basis for the government to move to strike a claim for failure to abide by Rule G(5) regarding the filing of claims and response thereto.  Fed. R. Civ. P. Supp. R. G(8)(c).  Rule C does not provide its own basis to strike.

United States District Court
Northern District of California

United States District Court
Northern District of California

**D.      The *Eitel* Factors Support Entering Default Judgment.**

Under Federal Rule of Civil Procedure 55(b), a plaintiff may apply for a default judgment against a defendant who has failed to plead or otherwise defend an action.  *Draper v. Coombs,* 792 F.2d 915, 925 (9th Cir. 1986).  A plaintiff may move for a default judgment pursuant to Federal Rule of Civil Procedure 55(b) after default is entered.   N.D. Cal. Admiralty L.R. 6-2.   Here, default was entered by the Clerk on July 22, 2015.  (Dkt. No. 30.)  However, a defendant's default "does not automatically entitle the plaintiff to a court-ordered judgment."  *Draper,* 792 F.2d at 924-925.  Generally, "[t]he district court's decision whether to enter default judgment is a discretionary one."  *Pepsico, Inc. v. Cal. Sec.* Cans, 238 F. Supp.2d 1172, 1175 (C.D. Cal. 2002).

In determining whether default judgment is appropriate, the Ninth Circuit has enumerated the following factors for the courts to consider:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F2d 1470, 1471-1472 (9th Cir. 1986).

**1.      Possibility of Prejudice to Harbor District.**

The first *Eitel* factor considers whether Harbor District would be prejudiced if default judgment is not entered.  Harbor District has provided a berth and necessaries to the Vessel without recouping its expense.  Harbor District has also incurred expenses while the Vessel has been *in custodia legis*.  If the Court denies Harbor District's Motion, Harbor District will be unable to recover the expenses incurred.  Therefore, the possibility of prejudice favors entry of default judgment.

**2.      Merits of Substantive Claim and Sufficiency of Complaint.**

The second and third *Eitel* factors consider the merits of Harbor District's substantive claim and the sufficiency of the Complaint.  After entry of default, well-pleaded factual allegations in the complaint regarding liability are taken as true, except as to damages.  *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906. (9th Cir. 2002); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915,

8

917-18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F. 2d 557, 560 (9th Cir. 1977)).[7]

Harbor District seeks to foreclose a maritime lien against the Vessel under 46 U.S.C. § 31342 based on unpaid fees for berthing and related costs.  Section 31342 provides, in relevant part:

> (a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner –
> (1) has a maritime lien on the vessel;
> (2) may bring a civil action *in rem* to enforce the lien; and
> (3) is not required to allege or prove in the action that credit was given to the vessel.
> (b) This section does not apply to a public vessel.

46 U.S.C. § 31342.

In order to establish a maritime lien for necessaries, a supplier must show: (1) that the goods or services were provided to the vessel; (2) that the goods or services were "necessaries"; (3) that the charges were reasonable in amount; and (4) that they were ordered by someone with the appropriate authority.  *Belcher Co. of Ala. V. M/V Martha Mariner,* 724 F.2d 1161, 1164 (5th Cir. 1984); *see also International Seafoods of Alaska, Inc. v. Park Ventures, Inc.*, 829 F.2d 751, 753 (9th Cir 1987); *Farwest Steel Corp v. Barge Sea Span 241,* 769 F.2d 620, 623 (9th Cir. 1985).

"Necessaries" include "repairs, supplies, towage, and use of a dry dock or marine railway." 46 U.S.C. § 31301(4).  "The list is not exhaustive, and in fact, modern admiralty jurisprudence interprets 'necessaries' broadly, as anything that facilitates or enables a vessel to perform its mission or occupation." *Ventura Packers,* 305 F.3d at 923.  "The term 'necessaries' includes most goods or services that are useful to the vessel to keep her out of danger."  *Id.*

Here, the Court finds that Harbor District made an adequate showing to establish a maritime lien under section 31342.  Harbor District has sufficiently alleged and provided adequate documentation to support that the Vessel incurred:  $1,335.18 in berth rental fees; $1,346.40 in

---

[7] "However, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law*." DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (citation omitted).  While the declaration of former Harbor Master Scott Grundy submitted in support of the motion (Dkt. No. 41) contained conclusory statements lacking the necessary factual support for some of the Harbor District's allegations of damages, the supplemental declaration of Ms. Cooper is adequately detailed and supports the allegations as well as the damages claims. (*See* Dkt. No. 52.)

short-term transient fees for the guest dock from the owner's use for a holiday party, where the Vessel was subsequently abandoned; $54.45 in electricity consumed by the Vessel; long-term transient charges of $26,551.80 incurred after the rental agreement was terminated; and late fees in the sum of $2,048.94. (Compl., ¶¶7, 11; Cooper Decl., ¶¶ 2-16.)  The Complaint is verified pursuant to Fed. R. Civ. P. Supp. Rule C(2) and the Cooper Declaration and its attached exhibits sufficiently establish the incurred charges of $31,336.77.

Second, the Court agrees that these services were "necessaries" under Section 31301(4). *See Crescent City Harbor Dist v. M/V Intrepid,* 2008 WL 5211023, at *3 (finding that wharfage is considered a necessary under maritime law); *Canton Port Servs. V. M/V Snow Bird* 690 F. Supp.2d 405, 408 (D. Md. 2010) (finding that docking services were necessaries); *Am. E. Dev. Corp. v. Everglades Marina, Inc.,* 608 F.2d 123, 125 (5th  Cir 1979) (recognizing that "[s]everal courts have imposed maritime liens for docking, wharfage, or storage fees . . . .").

Third, the Oyster Point Marina charges are reasonable and are of the type that can be expected by a harbor providing berthing to a vessel over an extended period.  *See Crescent City, WL 5211023, at *3.*  Fourth, Stahl procured the berthing for the Vessel.  (Compl., ¶6)  Under 46 U.S.C. § 31331(a)(1), as SYC's representative, Stahl is presumed to have authority to procure the necessaries for it.  In sum, the Court finds that Harbor District has sufficiently established the existence of a maritime lien under Section 31342 and that the second and third *Eitel* factors are met.

**3.     Amount of Money at Stake.**

When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged.  *Eitel,* 782 F.2d at 1472 (three-million dollar judgment considered in light of parties dispute as to material facts, supported decision not to enter default judgment); *Tragni v. Southern Elec. Inc.,* No. 09-32 JF, 2009 WL 3052635, at *5 (N.D. Cal. Sept. 22, 2009); *RBS Washington,* 2010 WL 145097, at *3 (*citing Eitel,* 782 F.2d at 1472.)  Here, Harbor District seeks damages of $31,336.77 for almost six months of rental fees, short-term transient fees, long-term transient fees, and metered electricity for the Vessel.  In addition, Harbor District seeks court-approved custodial fees incurred while the Vessel has been *in custodia legis* at the expense of

United States District Court
Northern District of California

1   $100 per day.  Because the sums of money at stake cover the care of the Vessel for almost a year,

2   the Court finds the sums requested are reasonable and that this *Eitel* factor weighs in favor of

3   default judgment.

4       **4.      Possibility of a Material Factual Dispute.**

5       The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the

6   material facts surrounding the case.  Here, the issue is straightforward.  Harbor District seeks to

7   recover expenses that are largely based on agreed upon rental rates, posted transient fees, and

8   court-approved custodial fees.  Copies of the termination and arrest of the Vessel were sent to

9   SYC's representative, Stahl.  (Cooper Decl., ¶ 7.)  The Complaint was personally served on its

10  registered agent for service of process (Dkt. No. 20, (Proof of Service).) and notification of the

11  arrest of the Vessel was published in compliance with Fed. R. Civ. P. Supp. Rule C(4) and Local

12  Admiralty Rule 6-1(a)(2)(i).   (Dkt. No. 19, (Proof of Publication).)  Yet, SYC failed to appear and

13  contest the allegations.  Given that there is no indication that there might be a disputed issue of

14  material fact, this factor weights in favor of default judgment.

15      **5.      Whether Default was the Result of Excusable Neglect.**

16      The sixth *Eitel* factor examines whether any interested party's failure to respond to the

17  plaintiff's allegations was the result of excusable neglect.  There is no indication that failure to

18  participate in this proceeding is due to excusable neglect.  *Shanghai Automation Instrument Co. v.*

19  *Kuei,* 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default after proper service is not excusable

20  neglect).  As previously noted, there were several opportunities for the interested parties to

21  respond, but they chose not to.  Accordingly, this factor weighs in favor of granting default

22  judgment.

23      **6.      Strong Policy Favoring Decisions on the Merits.**

24      The final *Eitel* factor examines whether the policy of deciding a case based on the merits

25  precludes entry of default judgment.  In *Eitel,* the Ninth Circuit cautioned that "[c]ases should be

26  decided upon their merits whenever reasonably possible."  *Eitel,* 782 F.2d at 1472.  However, this

27  policy is not dispositive.  Rather, the court still has great latitude in exercising its discretion with

28  regard to the relative weight of the remaining *Eitel* factors.  *Pepsico,* 238 F. Supp. 2d at 1177.

United States District Court
Northern District of California

1   Despite the policy of favoring decisions on the merits, default judgment is appropriate when a

2   defendant refuses to litigate a case.  Fed. R. Civ. P. 55(b); *see RBS Washington*, 2010 WL 145097,

3   at *4.  Therefore, default judgment is appropriate in the present circumstances.

4          Based on the foregoing, the Court finds that all but one of the *Eitel* factors weighs in favor

5   of granting a default judgment.  Therefore, the Court RECOMMENDS that the District Court

6   grant Harbor District's Motion for Default Judgment against the Vessel.

7   **E.      RELIEF SOUGHT.**

8          In addition to an order striking Gerhart's Statement of Interest, Harbor District requests

9   that judgment be entered on its behalf and for: (1) damages for necessaries (Cooper Decl., ¶ 15);

10  (2) *custodia legis* expenses of $100/day, the rate previously approved by the Court, as well as fees

11  related to the preservation of the Vessel  (Cooper Decl., ¶ 10.); and (3) an order compelling the

12  U.S. Marshal to sell the Vessel to pay the amount of the default, free of all mortgages, liens and

13  other encumbrances pursuant to Supplemental Rule E(9) and Local Admiralty Rule 9-2, according

14  to the terms set forth in Harbor District's proposed order.  (Compl. 4:19-22).

15         The Court finds that damages for necessaries in the sum of $31,336.77 and *in custodia*

16  *legis* expenses are sufficiently documented and appropriate for entry of default judgment.

17  Therefore, the Court RECOMMENDS that the District Court award Harbor District $31,336.77 in

18  damages and an amount *in custodia legis* expenses to be substantiated after the sale.

19         The Court also finds that ordering the U.S. Marshal to sell the Vessel at a public auction is

20  an appropriate way for Harbor District to foreclose on the lien.  Harbor District asks the Court to

21  issue an order for execution sale of the Vessel.  Harbor District also requests that it be permitted to

22  issue a credit bid for the Vessel at the sale for any and all accounts up to the amount of the

23  damages, including *custodia legis* expenses.  Admiralty Local Rules 9-2(b) provides that "a

24  plaintiff or intervening plaintiff foreclosing a properly recorded preferred mortgage on, or other

25  valid security interest in the vessel may bid, without payment of cash, certified check or cashier's

26  check up to the total amount of the secured indebtedness as established by affidavit filed and

27  served by that party on all other parties no later than 14 days prior to the date of sale."  Admir.

28  L.R. 9-2(b).  Accordingly, the Court RECOMMENDS the District Court issue an Order permitting

*United States District Court*
*Northern District of California*

1   Harbor District to credit bid at public auction so long as it complies with the provisions of Admir.

2   L.R. 9-2(b).

3   **CONCLUSION**

4         Based on the foregoing, the Court RECOMMENDS that the District Court GRANT Harbor

5   District's Motion to Strike Brian Gerhart's Statement of Interest.  The Court further

6   RECOMMENDS that the District Court GRANT Harbor District's Motion for Default Judgment and

7   enter default judgment against the M/V Spirit of Sacramento, her masts, sails, engine and

8   appurtenances, in the amount of $31,366.77 and *custodia legis* expenses (pursuant to a bill of costs

9   to be filed post-judgment), and allow Harbor District to recover the amount of its judgment from the

10   foreclosure of its maritime lien against the Vessel.  The Court also RECOMMENDS that the District

11   Court issue an Order for the final sale and that the Harbor District be permitted to issue a credit bid

12   in compliance with Admiralty Local Rule 9-2.

13   Dated:  December 4, 2015



SALLIE KIM
United States Magistrate Judge